# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JUDY ELLIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 04-2323 |
| ) | |
| **SECURITAS SECURITY SYSTEMS** ) | |
| **USA, INC. f/k/a PINKERTON** ) | |
| **SYSTEMS INTEGRATION, INC.,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **BURNS INTERNATIONAL SECURITY** ) | |
| **SERVICES CORPORATION,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **FOOT LOCKER, INC. f/k/a** ) | |
| **FOOT LOCKER/VENATOR GROUP,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

On July 12, 2004, Judy Ellis instituted this action under the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1 et seq., against Securitas Security Systems USA, Inc. and its predecessor Burns International Security Services Corporation ("Securitas/Burns"), and Foot Locker, Inc. ("Foot Locker"). Plaintiff worked for Securitas/Burns but was assigned to provided security services at the Foot Locker distribution center in Kansas. In filing suit, plaintiff claimed that Securitas/Burns and Foot Locker created a hostile work environment when they failed to take reasonable steps to remedy or prevent sexual harassment

by male truck drivers. Foot Locker filed a cross-claim against Securitas/Burns for contractual indemnification, seeking to recover expenses and fees which it incurred in defending plaintiff's claims. See Answer And Cross-Claim Of Defendant Foot Locker, Inc. (Doc. #12), filed September 7, 2004. On April 26, 2004, plaintiff voluntarily dismissed all claims against both Securitas/Burns and Foot Locker. Joint Stipulation Of Dismissal With Prejudice (Doc. #49). This matter comes before the Court on Securitas Security Systems USA, Inc.'s And Burns International Security Services Corporation's ["Securitas/Burns's"] Motion For Summary Judgment Of Defendant Foot Locker, Inc.'s Cross-Claim For Indemnity (Doc. #56) filed June 17, 2005. For the reasons stated below, the motion for summary judgment is overruled.

## Factual Background

The following facts are either undisputed or, where disputed, construed in the light most favorable to Foot Locker.

On February 1, 1999, Foot Locker, a retailer of athletic footwear and apparel, entered into a contract with Burns International Security Services Corporation ("Burns") for security services at the Foot Locker distribution center near Junction City, Kansas ("1999 Agreement"). The 1999 Agreement contained an indemnification clause which provided that Burns would indemnify Foot Locker for certain losses, as follows:

> [Burns] shall indemnify, defend and hold [Foot Locker] harmless from and against any and all loss, damage, expense, including all reasonable attorney's fees, responsibility and/or liability for all loss or injury of any kind or nature (including death) to all persons or property, or for claims thereof, to the extent resulting from, pertaining to or arising out of [Burns's], its employees, agents, assignees or subcontractors negligent acts or omissions. [Burns] shall assume, on behalf of [Foot Locker], the amount of any judgment that may be entered against [Foot Locker] in connection therewith. This indemnity shall not cover losses caused by [Foot Locker's] negligence.

Exhibit B to Memorandum In Support Of Securitas/Burns's Motion For Summary Judgment Of Defendant

Foot Locker, Inc.'s Cross-Claim For Indemnity (Doc. #57-3) ¶ 4.1.  In August of 2000, Securitas Security Systems USA, Inc. acquired Burns and continued to provide security services for the Foot Locker distribution center.  On July 26, 2002, Foot Locker and Securitas/Burns entered another contract for security services ("2002 Agreement").  The 2002 Agreement also provided an indemnification clause that read as follows:

> [Securitas/Burns] shall indemnify, defend and hold [Foot Locker] harmless from and against any and all loss, damage, expense, responsibility and/or liability for all loss or injury of any kind or nature (including death) to all persons or property, or for claims thereof, whether or not [Foot Locker] has suffered actual loss, damage, or expenses, to the extent resulting from, pertaining to or arising out of the negligent performance of this Agreement by [Securitas/Burns], its employees, agents, assignees, or subcontractors, including all reasonable attorney's fees incurred by [Foot Locker] which may be covered under the terms of this indemnity. [Securitas/Burns] shall assume, on behalf of [Foot Locker], the amount of the judgment that may be entered against [Foot Locker] in connection therewith to the extent [Securitas/Burns] is found to be negligent.  This indemnity shall not cover losses caused by [Foot Locker's] negligence.

Exhibit D to Supplement To Memorandum In Support Of Securitas/Burns's Motion For Summary Judgment Of Defendant Foot Locker, Inc.'s Cross-Claim For Indemnity (Doc. #61-5)  ¶ 4.1.

In April of 2001, Securitas/Burns hired plaintiff as a security officer for the Foot Locker distribution center.  After Securitas/Burns ended her employment on July 12, 2004, plaintiff brought this suit against Securitas/Burns and Foot Locker, alleging two counts of sex discrimination.  See Complaint (Doc. #1).  Plaintiff specifically alleged that each defendant knew about sexually harassing conduct which truck drivers directed toward female security officers, including herself, and that each failed to take prompt effective remedial action. Id. at 7–9.  Count I, against Foot Locker, alleged as follows:

> 30.  Foot Locker controlled the day-to-day employment decisions of plaintiff, such as where and when she worked, with whom she worked, her duties during her shift and to whom she reported.
> 31.  Foot Locker controlled the location of the guard shack and even moved it to a more isolated location than when plaintiff first began to work for defendants.

3

    32.    Foot Locker and its managers knew that the female employees in the guard shack were being harassed and attacked by incoming truck drivers.

    33.    Foot Locker failed to take reasonable steps to remedy or prevent these attacks and the sexual harassment. * * *

    36.    Defendant Foot Locker acted with reckless indifference to plaintiff's federally protected rights.

    37.    As a direct and proximate result of the unlawful practices of defendant [Foot Locker], plaintiff has sustained damages in the form of lost wages, emotional distress, humiliation, mental anguish and pain and suffering.

Complaint (Doc. #1) at 7. Count II made similar allegations against Securitas/Burns:

    39.    [Securitas/Burns] controlled the position to which plaintiff was assigned.

    40.    [Securitas/Burns] could have reassigned plaintiff to a different area within Foot Locker's warehouse.

    41.    [Securitas/Burns] and their managers knew that female employees had been harassed and attacked by incoming truck drivers and were in continuing jeopardy of further harassment and attacks.

    42.    [Securitas/Burns] failed to take any action to remedy or prevent these attacks and the sexual harassment. * * *

    45.    [Securitas/Burns] acted with reckless indifference to plaintiff's federally protected rights.

    46.    As a direct and proximate result of the unlawful practices of defendant [Securitas/Burns], plaintiff has sustained damages in the form of lost wages, emotional distress, humiliation, mental anguish and pain and suffering.

Id. at 8–9. In its answer, Foot Locker asserted a cross-claim for indemnification under the 1999 and 2002 agreements. See Answer And Cross-Claim Of Defendant Foot Locker, Inc. (Doc. 12).

On March 18, 2005, Ellis settled her claims against Securitas/Burns and Foot Locker. See Exhibit D to Memorandum In Support Of Securitas/Burns's Motion For Summary Judgment Of Defendant Foot Locker, Inc.'s Cross-Claim For Indemnity (Doc. #57-5) ("Settlement Agreement"). Securitas/Burns provided a monetary settlement in exchange for a voluntary dismissal, with prejudice, of all claims against it and Foot Locker. The Settlement Agreement expressly stated that Securitas/Burns denied liability to Foot Locker for any settlement payment, legal fees or other expenses which Foot Locker incurred in defending plaintiff's suit.

Securitas/Burns seeks summary judgment on Foot Locker's cross-claim, asserting that it is entitled to judgment as a matter of law because (1) plaintiff's claim against Foot Locker was for sex discrimination, not negligence covered by the 1999 and 2002 indemnification clauses; and (2) even if the indemnification agreements covered sex discrimination, plaintiff based her claim against Foot Locker on conduct by Foot Locker, and Securitas/Burns is not obligated to indemnify Foot Locker for its own misconduct.

## Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed. R. Civ. P.; accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538–39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250–51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52.

## **Analysis**

Foot Locker asserts that it is entitled to contractual indemnification for attorneys fees and other expenses which it incurred in defending plaintiff's claim for sex discrimination. Securitas/Burns argues that it is entitled to summary judgment because (1) the 1999 and 2002 agreements only obligate it to indemnify losses for negligence claims, not Title VII claims; and (2) plaintiff's claim against Foot Locker was based solely on conduct of Foot Locker, for which Securitas/Burns is not required to indemnify under the 1999 and 2002 agreements.

Each agreement provides that it "shall be governed by the laws of New York State without regard to its Conflict of Laws Provisions." Exhibit B to Memorandum In Support Of Securitas/Burns's Motion For Summary Judgment Of Defendant Foot Locker, Inc.'s Cross-Claim For Indemnity (Doc. #57-3) at Art. XII; Exhibit D to Supplement To Memorandum In Support Of Securitas/Burns's Motion For Summary Judgment Of Defendant Foot Locker, Inc.'s Cross-Claim For Indemnity (Doc. #61-5) at Art. X. Under New York law, the Court initially interprets a contract as a matter of law. Int'l Multifoods Corp. v. Commercial Union Ins. Co.,

309 F.3d 76, 83 (2d Cir. 2002).  The Court examines whether the contract is ambiguous with regard to the disputed term.  Id.  Ambiguity exists where a contract term could evince more than one meaning in the eyes of a reasonable person, and if such ambiguity is found, the Court may accept extrinsic evidence to determine the parties' intended meaning.  Id. (citing Morgan Stanley Group, Inc. v. New Eng. Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000)).  If the Court finds that the contract is unambiguous, it should assign each term its plain meaning without considering extrinsic evidence, and may then award summary judgment.  Id. (citing Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, 136 F.3d 82, 86 (2d Cir. 1998).

## I.    Indemnification for Title VII Sex Discrimination

Securitas/Burns argues that under the clear and unambiguous language of the 1999 and 2002 agreements, it is only required to indemnify Foot Locker for negligence claims, not Title VII or other employment claims.  Securitas/Burns asserts that because Ellis did not bring negligence claims, it is entitled to summary judgment.  Foot Locker responds that the indemnification clauses cover more than just negligence claims, and interprets them to broadly cover *any* claim that stems from the negligence of Securitas/Burns, including sex discrimination under Title VII.

An indemnity provision must be interpreted to effectuate the intent of the parties as indicated by the unequivocal language of the contract.  Gibbs-Alfano v. Burton, 281 F.3d 12, 19 (2d Cir. 2002) (applying New York law to interpret an indemnification clause).  Where a party is not legally bound to indemnify another, but a contract imposes such an obligation, the Court must strictly construe the contract to avoid creating an unintended obligation.  Id. (citing Hooper Assocs. V. AGS Computers, Inc., 548 N.E.2d 903 (N.Y. 1989)).  Under New York law, a Court cannot find a duty to indemnify absent the manifestation of an "unmistakable intention" to indemnify.  Manley v. AmBase Corp., 337 F.3d 237, 245 (2d Cir. 2003) (citations omitted).

7

New York courts have recognized that:

> [the] language of an indemnity provision should be construed so as to encompass only that loss and damage which reasonably appear[s] to have been within the intent of the parties. It should not be extended to include damages which are neither expressly within its terms nor of such character that it is reasonable to infer that they were intended to be covered under the contract.

Tokyo Tanker Co. v. Etra Shipping Corp., 142 A.D.2d 377, 380 (N.Y. App. Div. 1989) (quoting Niagara Frontier Transp. Auth. v. Tri-Delta Constr. Corps., 107 A.D.2d 450, 453 (N.Y. App. Div. 1985)).

In this case, the 1999 and 2002 agreements require indemnification for "any and all" loss, damage or other injury "of any kind or nature" which results from, pertains to or arises out of negligence of Securitas/Burns. Such broad language does not limit the obligation of Securitas/Burns to claims which are formally labeled as negligence claims. The clauses require wide-ranging indemnity, encompassing even Title VII claims, where they result from, pertain to or arise out of the negligence of Securitas/Burns. Plaintiff's claims against Securitas/Burns and Foot Locker clearly encompass allegations of negligence.[1] See Complaint (Doc. #1) at 7–9 (with knowledge of attacks and sexual harassment, defendants failed to take reasonable steps to remedy or prevent injury to plaintiff). Thus, summary judgment is not proper on this ground.

## II. Negligent Conduct Alleged in Claim Against Foot Locker

Securitas/Burns argues that it is entitled to summary judgment because the agreements only require it

---

[1] The Court recognizes that plaintiff's complaint alleges intentional discrimination, and that negligence is not a sufficient basis for liability under Title VII. See Elmore v. Capstan, Inc., 58 F.3d 525, 529–30 (10th Cir. 1995) (plaintiff must prove intentional discrimination in disparate treatment case); see also Archuleta v. Colorado Prob. Dep't, 12th Judicial Dist., 46 F. Supp. 2d 1100, 1106 (D. Colo. 1998) (factual inquiry in Title VII case is whether defendant intentionally discriminated against plaintiff). In most cases where plaintiff establishes a sexually hostile work environment, a pivotal issue is whether defendant intended to subject plaintiff to that condition of employment and whether it took reasonable measures to prevent and promptly correct any such circumstances. Burlington Indus. V. Ellerth, 524 U.S. 742, 756 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807–08 (1998).

to indemnify Foot Locker for the negligence of Securitas/Burns, and not Foot Locker's own negligence. Securitas/Burns asserts that plaintiff's claim against Foot Locker is based solely on Foot Locker's own conduct, for which no indemnity is afforded. Foot Locker responds that a jury must determine whether plaintiff's claim arose from the negligence of Securitas/Burns or that of Foot Locker, and that the Court cannot make that determination as a matter of law from plaintiff's complaint.

"The long established rule in New York is that contracts will not be construed to indemnify a [party] against [its] own negligence unless such intention is expressed in unequivocal terms." Morgan v. Good Humor Corp., 54 A.D.2d 560, 560–61 (N.Y. App. Div. 1976) (citations omitted); see also One Beacon Ins. Co. v. Orange & Rockland Utils., Inc., 361 F. Supp. 2d 331, 334–35 (S.D.N.Y. 2005). It is also well-settled in New York that a contract provision indemnifying a party for another's negligence is enforceable — provided negligence has been proven. Hennard v. Boyce, 6 A.D.3d 1132, 1133–34 (N.Y. App. Div. 2004). In Hennard, the plaintiff brought suit to recover for injuries he suffered at a construction site. The complaint named the site owner and an excavation subcontractor as defendants. The subcontractor subsequently impleaded the general contractor to seek contractual indemnification. After the subcontractor obtained dismissal of plaintiff's claim, the trial court held that the cross-claim for indemnification was moot and granted summary judgment in favor of the general contractor. The appellate court reversed, finding that the indemnification claim remained viable to the extent that it sought attorneys fees and costs incurred in the subcontractor's defense. The appellate court stated, however, that the obligation to indemnify was triggered only if the general contractor was found to be negligent.

The 1999 and 2002 agreements reveal no undertaking to indemnify Foot Locker for its own negligence. Securitas/Burns is required to indemnify Foot Locker for attorneys fees and expenses which resulted from,

pertained to or arose out of the negligent acts or omissions of Securitas/Burns. Following Hennard, Foot Locker's cross-claim for indemnification remains viable notwithstanding the settlement and voluntary dismissal. The Court cannot resolve it, however, based solely on the allegations of the complaint. The trier of fact must determine (1) whether Securitas/Burns was negligent, and (2) if so, whether and to what extent Foot Locker incurred attorneys fees and expenses that resulted from, pertained to or arose out of that negligence. Summary judgment is not appropriate.[2]

**IT IS THEREFORE ORDERED** that Securitas/Burns's Motion For Summary Judgment Of Defendant Foot Locker, Inc.'s Cross-Claim For Indemnity (Doc. #56), filed June 17, 2005 be and hereby is OVERRULED.

Dated this 27th day of September, 2005 at Kansas City, Kansas.

> s/ Kathryn H. Vratil
> Kathryn H. Vratil
> United States District Judge

---

[2] Where a contractual duty to indemnify is contingent upon the negligence of a party to the contract, New York courts have consistently found summary judgment to be inappropriate. Polat v. Fifty CPW Tenants Corp., 249 A.D.2d 163, 164 (N.Y. App. Div. 2003) (summary judgment for indemnitor denied because negligence of indemnitees not yet proven); see also Wausau Bus. Ins. Co. v. Turner Constr. Co., 143 F. Supp. 2d 336, 344 (S.D.N.Y. 2001) (summary judgment for indemnitee premature because right to indemnity dependent upon jury finding of negligence); see also Cichon v. Brista Estates Assocs., 193 A.D.2d 926 927–28 (N.Y. App. Div. 1993) (summary judgment premature because right to indemnity was dependent on finding indemnitor negligent); see also Crespo v. City of New York, 303 A.D.2d 166, 167 (N.Y. App. Div. 2003) (summary judgment denied because indemnification depended on factual finding regarding negligence); see also Fiske v. Church of St. Mary of the Angels, 802 F. Supp. 872, 885 (W.D.N.Y. 1992) (summary judgment denied because of material issues of fact regarding negligence and control). Thus, unless the moving party can show that no genuine issues of material fact exist as to negligence, the issue must be determined at trial.